ANTONIA M. APPS
REGIONAL DIRECTOR
Thomas P. Smith, Jr.
Lindsay S. Moilanen
Chevon Walker
John C. Lehmann
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl St.
Suite 20-100
New York, NY 10004-2616
(212) 336-0090 (Walker)
WalkerCH@sec.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>       Plaintiff,<br><br> -against-<br><br>WAYNE H. MCLEAN and<br>JOAN E. POWELL,<br><br>       Defendants, | <u>COMPLAINT</u><br><br>2:23-cv-02333<br><br>JURY TRIAL DEMANDED |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendants Wayne H. McLean ("McLean") and Joan E. Powell ("Powell") (collectively "Defendants"), alleges as follows:

### SUMMARY

1.   This action arises from McLean's and Powell's participation in a global securities offering fraud targeting thousands of retail investors, orchestrated by Roger Nils-

Jonas Karlsson ("Karlsson") through his entity Eastern Metal Securities ("EMS").[1] Through this fraudulent scheme, Defendants and Karlsson enticed and defrauded investors of their funds with the false promise of astronomical returns tied to the price of gold, resulting from nominal investments in securities.

2. From approximately November 2012 to June 2019, through EMS's website, Karlsson, using various aliases, orchestrated a fraudulent scheme in which he offered and sold shares of a "Pre Funded Reversed Pension Plan" ("PFRPP") that Karlsson claimed to be the world's first online investment of such type. The EMS website falsely boasted that its investment platform was run by award-winning economists and other professionals from South Africa and Switzerland. In fact, the EMS PFRPP shares were worthless and Karlsson stole millions from investors.

3. McLean and Powell, who are siblings, participated in Karlsson's fraudulent scheme. Specifically, McLean regularly offered and sold EMS PFRPP shares to investors, including by making solicitations through podcasts from at least August 2014 through June 2019. During these podcasts, McLean made materially false and misleading statements concerning the potential payout of EMS PFRPP shares, EMS management and its work with the Commission staff to comply with regulatory requirements, and the nature and offering of EMS PFRPP shares. For her part, during approximately January 2015 through June 2019, Powell

---

[1] In a criminal matter related to this conduct, Karlsson pled guilty to securities fraud, 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, among other charges, and was sentenced to 15 years of incarceration, and ordered to pay restitution of $8,491,396.33 and was ordered to forfeit $16,263,820, as well as certain properties. *United States v. Roger Karlsson*, 19-cr-340 (N.D. Cal.). Also, in a parallel civil action filed by the Commission, Karlsson consented to a final judgment enjoining him from violating Sections 5 and 17(a) of the Securities Act of 1933 [15 U.S.C. §§ 77e and 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [15 U.S.C. § 240.10b-5] and ordering disgorgement and prejudgment interest, which was deemed satisfied by the restitution and forfeiture orders in the criminal case. *SEC v. Roger Nils-Jonas Karlsson*, 20-cv-4615-ST (E.D.N.Y.).

collected and forwarded investor money to accounts controlled by Karlsson and accounts of others for ultimate transfer to Karlsson. Additionally, McLean and Powell each retained a portion of the investors' funds they collected for their own personal use despite claiming to investors that they were performing these functions for free.

## VIOLATIONS

4. By virtue of the foregoing conduct and as alleged further herein, McLean violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)]; and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

5. By virtue of the foregoing conduct and as alleged further herein, Powell violated Sections 17(a)(1) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)]; and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

6. Unless Defendants are restrained and enjoined, they will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

7. The Commission brings this action pursuant to the authority conferred upon it by Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

8. The Commission seeks a final judgment: (a) permanently enjoining Defendants from violating the federal securities laws and rules this Complaint alleges they have violated; (b) ordering Defendants to disgorge all ill-gotten gains they received as a result of the violations

alleged here and to pay prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)]; (c) ordering Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; (d) permanently prohibiting Defendants from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; and (e) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

10. Defendants, directly and indirectly, have made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

11. Venue lies in this District under Section 22(a) of the Securities Act [15 U.S.C. § 78v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the Eastern District of New York. McLean and Powell communicated with and received funds from EMS investors located in this District.

## DEFENDANTS

12. **McLean**, age 64, resides in Lithonia, GA. McLean has never been registered with the Commission and holds no securities licenses.

13. **Powell**, age 68, resides in Mount Kisco, NY. Powell has never been registered with the Commission and holds no securities licenses. Powell is McLean's sister.

### RELATED INDIVIDUAL AND ENTITY

14. **Karlsson** is a Swedish citizen who is currently incarcerated in the United States for orchestrating the EMS scheme.

15. **EMS** was an entity with no known corporate structure that maintained an Internet presence through the website www.easternmetalsecurities.com. EMS claimed to offer securities backed by a PFRPP tied to the value of gold.

### TOLLING AGREEMENTS

16. McLean has entered into tolling agreements with the Commission, tolling and suspending the running of the statute of limitations applicable to this action for the period of November 1, 2022 through April 27, 2023.

17. Powell has entered into tolling agreements with the Commission, tolling and suspending the running of the statute of limitations applicable to this action for the period of November 1, 2022 through April 27, 2023.

### FACTS

18. From at least August 2014 through June 2019, Defendants participated in the EMS scheme by inducing investors to send money to Defendants for purported investment in a PFRPP through the purchase of shares, which Defendants then misappropriated by transferring investor funds to Karlsson-controlled accounts, transferring investor funds to others for ultimate transfer to Karlsson, or using investor funds for their own personal expenses.

19. Karlsson, through EMS, defrauded investors in the United States and around the world by enticing them with the false promise of astronomical returns resulting from the purchase of EMS PFRPP shares, the value of such were purportedly tied to the value of gold.

20. According to the EMS website, investment in the purportedly PFRPP-backed shares was fully guaranteed, EMS PFRPP shares would generate returns for investors, and the risk of loss was "totally eliminated" because the PFRPPs were already funded through a "BG Bank Guaranteed Note." According to the website, the PFRPP accounts "only await[ed] for individuals to put their names on these accounts to be able to benefit from the payout amount."

21. The EMS website asserted that after the purchase of shares at prices of $38 and $98, investors would ultimately receive a payout for each share purchased equal to the value of 1.15 kilograms of gold. In fact, no such payouts occurred.

22. Based upon the foregoing, investments in the EMS PFRPP were offered and sold as "investment contracts," and thus securities within the meaning of Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)].

I. **McLean Made Material Misrepresentations to Investors**

23. Karlsson and others, including McLean, promoted the purchase of EMS PFRPP shares through websites, podcasts, and direct contact with potential investors.

24. Specifically, from at least August 2014 to June 2019, McLean touted EMS PFRPP shares in podcasts and emails he sent to investors, extolling the purported benefits of the investment and providing commentary promoting the investment as explained in EMS website postings and emails sent to investors reiterating such information created by Karlsson using Karlsson's aliases.

25. On podcasts, to induce investors to send money to purchase EMS PFRPP shares, McLean made a number of misrepresentations to potential and existing investors, which he knew or recklessly disregarded were false and misleading.

26. During an August 19, 2014 podcast, McLean falsely told investors that EMS was working with the Commission to "work[] out a plan" for the investment.

27. This was not true. EMS management was not working with the Commission concerning its offering of investments in the PFRPP.

28. Additionally, on an October 23, 2018 podcast, McLean told investors that EMS had offices located in a secure building in New York, where investors will be invited at a later payout date, and referred to EMS investors as new "millionaire[s]/billionaire[s]."

29. In reality, there would be no payout for the investors.

30. While McLean often told investors that EMS PFRPP shares would only be available for purchase for a short time and the payout was soon, he continued offering the shares for years and the payout never materialized.

31. On a September 16, 2014 podcast, McLean told investors that while EMS was in "the payout phase," they are still offering shares to "individuals who want to secure more shares who did not have the opportunity to do so when they thought it closed" and "they are offering shares for a few more days for individuals who want them."

32. Despite that assertion, McLean continued to offer shares throughout the years. On a podcast as late as April 2, 2019, McLean offered EMS PFRPP shares for purchase.

33. Also, on several podcasts in which he encouraged investors to purchase EMS PFRPP shares, McLean often mentioned that an individual by the name of "Mr. X" was involved in EMS operations.

34. In email correspondence and podcasts with investors, McLean repeatedly identified "Mr. X" as the Chairman of the Federal Reserve.

35. For example, in a November 27, 2018 podcast, McLean read correspondence to investors, purportedly from the CEO of EMS, which falsely stated that "Mr. X . . . the recently appointed and 16th Chairman of the Federal Reserve," was personally involved with EMS and had recently met with the company's CEO.

36. In fact, EMS had no connection to the then Chairman of the Board of Governors of the Federal Reserve System.

37. Additionally, McLean falsely asserted that he and his sister, Powell, were helping people invest in EMS for free.

38. For example, during a May 5, 2015 podcast, McLean told investors that he and Powell have never been, nor encouraged to be, employed by EMS.

39. Likewise, in a June 11, 2019 podcast, McLean told investors that he and Powell "have helped thousands of individuals, over the years, to understand what this investment is about . . . as well as facilitating the purchase of shares . . . We don't get paid for it."

40. In reality, McLean and Powell misappropriated funds that EMS investors sent them to purchase shares, including spending investor funds on their personal expenses.

41. Also through podcasts and emails, during approximately August 2014 to June 2019, McLean falsely told investors that they would only receive their promised EMS investment "payout" if they (a) sent their money to EMS through money mover accounts, including accounts controlled by Powell or himself, (b) provided self-identifying documentation for purported "know your customer" obligations, (c) signed a non-disclosure agreement, and (d) did not disparage EMS to others.

42. Throughout the EMS scheme, McLean also repeatedly lied to investors about the value of EMS PFRPP shares to encourage their purchase.

43. On an April 14, 2015 podcast, McLean told investors that he was "very knowledgeable into [sic] the financial markets as well as international banking and finance" and that EMS PFRPP shares that previously sold for less than $100, now had a value of approximately $44,000, equal to that of 1.15 kg of gold.

44. Years later, on a June 19, 2018 podcast, McLean told investors that the unrealized value of an EMS PFRPP share was $45,678.

45. In fact, EMS PFRPP shares had no value and were not tied to the value of gold.

46. McLean knew or recklessly disregarded that each of the foregoing statements he made to potential and existing EMS investors was false and misleading.

## II.    McLean and Powell Misappropriated EMS Investors' Funds

47. McLean and Powell directed investors to send funds for investment in the EMS PFRPP to certain accounts beneficially owned or controlled by money movers who facilitated the scheme.

48. Money movers, including McLean and Powell, collected funds in accounts from hundreds of investors seeking to invest in the EMS PFRPP and then transferred investor assets to accounts that Karlsson controlled or other money mover accounts for ultimate transfer to Karlsson. Karlsson then misappropriated assets transferred to him.

49. Specifically, Powell served as a money mover in the United States for Karlsson.

50. During at least August 2014 through June 2019, Powell participated in McLean's podcasts where EMS PFRPP shares were offered and regularly communicated with EMS investors through email and calls.

9

51. During this period, Powell was regularly copied on emails from EMS investors to Karlsson (or his alias accounts), wherein investors frequently communicated concerns, issues, and questions about their EMS investments.

52. During approximately August 2014 through June 2019, on podcasts and in emails, Powell directed investors to send their funds to accounts she controlled, purportedly for investment in the EMS PFRPP; however, upon receipt, Powell transferred investors' assets to Karlsson controlled accounts or other money mover accounts for ultimate transfer to Karlsson, not an EMS account.

53. During approximately January 2015 through June 2019, Powell collected over $1.99 million from EMS investors, the majority of which Powell transferred to accounts controlled by Karlsson or other money mover accounts for ultimate transfer to Karlsson, as part of the EMS PFRPP scheme.

54. Powell converted some investor funds she received into cryptocurrency, which she then transferred to Karlsson-controlled accounts or other money mover accounts for ultimate transfer to Karlsson, as part of the EMS PFRPP scheme.

55. At no point did Powell transfer EMS investor assets she received to accounts held by EMS.

56. Also, between approximately January 2015 and June 2019, Powell spent thousands of dollars of EMS investors' funds she collected on her personal expenses, such as credit card payments, nail salon charges, and store items.

57. For example, Powell spent investor funds on personal expenses in December 2017.

58. On or about December 7, 2017, one of Powell's personal bank accounts ("Powell Account") had a balance of less than $2,600.

59. Between approximately December 8, 2017 and December 26, 2017, Powell received over $18,000 in deposits into the Powell Account from investors seeking to purchase EMS PFRPP shares.

60. Throughout the month of December 2017, out of the Powell Account, Powell transferred just over $1,000 to another money mover account for ultimate transfer to Karlsson, withdrew approximately $6,000 in cash, and spent over $9,000 on personal expenses such as credit card payments, store goods, insurance, utilities, fuel, and parking costs.

61. While EMS investor deposits into the Powell Account were comingled with deposits from other sources throughout December 2017, those other source deposits did not amount to the over $15,000 Powell collectively withdrew in cash and spent on personal expenses.

62. Powell did not disclose to EMS investors that she would retain a portion of investors' funds for her personal use.

63. Powell knew or recklessly disregarded that she was engaged in manipulative, deceptive, and fraudulent conduct by, among other things, directing investors to send her money for purported investments in the EMS PFRPP; accepting investor assets; spending EMS investors' funds on her personal expenses; and transferring EMS investors' funds to Karlsson and accounts of other money movers for ultimate transfer to Karlsson, as opposed to EMS controlled accounts.

64. McLean also collected and transferred investor assets, as part of the scheme. Between approximately January 2015 and June 2019, while encouraging investors to send him

money to purchase EMS PFRPP shares, McLean collected over $250,000 from investors for purported investment in the EMS PFRPP, of which he then transferred over $40,000 to accounts controlled by Powell, as part of the EMS PFRPP scheme.

65. At no point did McLean transfer investor assets, which investors sent him for the purported purchase of EMS PFRPP shares, to accounts held by EMS.

66. Between approximately January 2015 and June 2019, McLean too spent thousands of dollars of EMS investor funds on his personal expenses, such as food and store goods.

67. For example, between March 2015 and May 2015, McLean received over $13,000 into one of his personal bank accounts ("McLean Account A") from investors for the purchase of EMS PFRPP shares.

68. Prior to receipt of investor funds beginning in March 2015, McLean Account A had a balance of $0.

69. After receipt of investor funds into McLean Account A, between March 2015 and May 2015, McLean withdrew approximately $3,600 in cash and spent over $1,200 on personal expenses, including store goods, utilities, and fuel.

70. Additionally, on or about October 7, 2016, McLean received over $1,000 into another one of his personal checking accounts ("McLean Account B") from an investor for the purchase of EMS PFRPP shares.

71. Prior to the investor's October 7, 2016 deposit into McLean Account B, the account had a negative balance.

72. After receipt of the investor's funds into McLean Account B, through October 11, 2016, McLean spent approximately $750 from that account on personal expenses, including school-related fees, store goods, food, fuel, and phone-related payments.

73. McLean did not disclose to EMS investors that he would retain investors' funds for his personal use.

74. McLean knew or recklessly disregarded that he was engaged in manipulative, deceptive, and fraudulent conduct by, among other things, directing investors to send him money for purported investments in the EMS PFRPP, spending EMS investors' funds on his personal expenses, and transferring EMS investors' funds to Powell.

## FIRST CLAIM FOR RELIEF
### Violations of Securities Act Section 17(a)
### (McLean)

75. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 74.

76. Defendant McLean, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails has, (1) knowingly or recklessly employed one or more devices, schemes or artifices to defraud, (2) knowingly, recklessly, or negligently obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) knowingly, recklessly, or negligently engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

77. By reason of the foregoing, Defendant McLean, directly or indirectly, violated

and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
### Violations of Securities Act Sections 17(a)(1) and (3)
### (Powell)

78. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 74.

79. Defendant Powell, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails has, (1) knowingly or recklessly employed one or more devices, schemes or artifices to defraud, and/or (2) knowingly, recklessly, or negligently engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

80. By reason of the foregoing, Defendant Powell, directly or indirectly, violated and, unless enjoined, will again violate Securities Act Sections 17(a)(1) and (3) [15 U.S.C. §§ 77q(a)(1) and (3)].

## THIRD CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder
### (McLean)

81. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 74.

82. Defendant McLean, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts

necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

83. By reason of the foregoing, Defendant McLean, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## FOURTH CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rules 10b-5(a) and (c) Thereunder
### (Powell)

84. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 74.

85. Defendant Powell, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has (i) employed one or more devices, schemes, or artifices to defraud, and/or (ii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

86. By reason of the foregoing, Defendant Powell, directly or indirectly, singly or in concert, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently restraining and enjoining McLean and Powell, their agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### II.

Barring McLean and Powell, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)] from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]; and

### III.

Ordering McLean and Powell to disgorge all ill-gotten gains they received directly or indirectly, with prejudgment interest thereon, as a result of the alleged violations pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

## IV.

Ordering McLean and Powell to pay civil monetary penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

## V.

Granting any other and further relief this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands trial by jury in this action issues so triable.

Dated: New York, New York
March 27, 2023

Respectfully submitted,

*/s/ Antonia M. Apps*

Antonia M. Apps
Thomas P. Smith, Jr.
Lindsay S. Moilanen
Chevon Walker
John C. Lehmann
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004
(212) 336-0090 (Walker)
WalkerCH@sec.gov

Attorneys for Plaintiff